UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dixie J. P., | Case No. 23-cv-1104 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley[1], Commissioner of Social Security Administration, | |
| Defendant. | |

Edward A. Wicklund, Olinsky Law Group, 250 South Clinton Street, Suite 210, Syracuse, NY 13202 and Jyotsna Asha Sharma, Disability Partners, PLLC, 2579 Hamline Avenue North, Suite C, Roseville, MN 55113 (for Plaintiff); and

Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and James D. Sides, Linda H. Green, and Sophie Doroba, Social Security Administration, Office of Program Litigation, Office 4, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

# I. INTRODUCTION

Plaintiff Dixie J. P. brings the present case, contesting Defendant Commissioner of Social Security's denial of supplemental security income ("SSI") under Title XVI of the Social security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] Martin O'Malley is currently serving as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

1

Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules governing social security actions, this action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a Motion for Summary Judgment, ECF No. 17, — which was the procedure prior to the amendment to Rule 5—requesting the Commissioner's decision to be reversed and remanded for further administrative proceedings. Defendant filed a brief, ECF No. 20, requesting the Court to affirm the Commissioner's decision.

For the reasons set forth below, the Court denies Plaintiff's motion and affirms the Commissioner's decision.

## II. PROCEDURAL HISTORY

On February 19, 2019, Plaintiff applied for SSI, alleging disability beginning on November 30, 1993 due to degenerative disc disease, gout, rheumatoid arthritis, Crohn's disease, COPD, diverticulitis, high blood pressure, diabetes, anxiety disorder, and depression. Tr. 251, 295, ECF No. 10. Plaintiff's application was denied initially in May 2019, and again upon reconsideration in August 2019. Tr. 179-86, 187-88. Plaintiff appealed the reconsideration of her SSI determination and a hearing before an administrative law judge ("ALJ") was held in June 2020. Tr. 39-88. An unfavorable decision was issued following from the June 2020 hearing. Tr. 15-34. After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-3. Plaintiff then requested the alleged onset date be amended from November 30, 1993 to February 19, 2019. Tr. 829.

Next, Plaintiff brought a social security action in the Southern District of Ohio, where the Commissioner's motion for a voluntary remand was granted and the Appeals Council subsequently remanded the matter in July 2022. Tr. 719-22, 749-51. A hearing before an ALJ was then held in January 2023, Tr. 695-714, and the ALJ issued in February 2023 an unfavorable decision. Tr. 654-88. The ALJ's February 2023 decision became the final decision of the Commissioner subject to judicial review. *See* 42 U.S.C. § 405(g). Plaintiff now seeks review by this Court.

### III. ALJ's DECISION

The ALJ found in its February 2023 decision that Plaintiff has not engaged in substantial gainful activity since February 19, 2019. Tr. 660. Next, the ALJ found that Plaintiff has the following severe impairment: osteoarthrosis of the left hip; inflammatory bowel disease; chronic obstructive pulmonary disease; diabetes mellitus with neuropathy; obesity; and borderline intellectual functioning. Tr. 660. The ALJ also concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Tr. 667.

As for Plaintiff's residual functional capacity, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), Tr. 674, expect for the following:

> the claimant is limited to occasional climbing of ramps, stairs, and ladders; the claimant is limited to no climbing of ropes and scaffolds; the claimant is limited to occasional stooping, kneeling, crouching, and crawling; the claimant is limited to frequent handling with the dominant (right) upper extremity; the claimant needs to avoid concentrated exposure to fumes,

3

odors, dusts, gases, unprotected heights, and unprotected moving machinery; and the claimant is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in the job process from day to day, and jobs with multistep tasks, easily resumed after momentary distraction.

Tr. 674. The ALJ next found that Plaintiff has no past relevant work. Tr. 686. Taking into consideration Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as the following unskilled jobs: housekeeping/cleaner, marker, router, document specialist, surveillance system monitor, and addressor. Tr. 686-87. Accordingly, the ALJ concluded that Plaintiff has not been disabled since February 19, 2019. Tr. 688.

## IV. ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 1381a; *accord* 20 C.F.R. § 416.901. An individual is considered to be disabled if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *accord* 20 C.F.R. § 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); *accord* 20 C.F.R. § 416.905(a).

The ALJ determines disability according to a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). Within this evaluation process, the ALJ determines Plaintiff's residual functional capacity, which "is the most [she] can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence."). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 416.912(a).

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). Thus, the Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich*, 888 F.3d at 979

5

(defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627. "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

### B. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of medical opinion evidence. *See* Pl.'s Mem. in Supp. at 6-11, ECF No. 18; *see also* Pl.'s Reply, ECF No. 21. Plaintiff specifically challenges the ALJ's evaluation of a consultative examiner's opinion and two state agency psychologists' opinions, including whether the ALJ failed to address a part of the state psychologists' opinions. *Id.* In evaluating the persuasiveness of medical opinions, an ALJ must consider "(1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v.*

6

*Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)[2]). "The first two factors—supportability[3] and consistency[4]—are the most important." *Id.* (citing 20 C.F.R. § 404.1520c(a)). But "[n]o talismanic language is required for the ALJ to meet the requirements of [20 C.F.R.] § 404.1520c, only that the ALJ make it clear that they considered the supportability and consistency of an opinion." *Mario O. v. Kijakazi*, No. 21-cv-2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 136590 (D. Minn. Jan. 9, 2023). Explicit use of the terms "supportability" and "consistency" is not required. *See* 20 C.F.R. § 416.920c(b).

1. **Consultative Examiner Dr. Ward's Opinion**

In April 2019, consultative examiner Dr. Ward examined Plaintiff, Tr. 534-41, and offered four opinions. Dr. Ward first opined that Plaintiff's testing performance "was suggestive of difficulty understanding complex and more sophisticated one-step instructions" and "suggestive of difficulty remembering complex and more sophisticated one-step instructions." Tr. 540. Dr. Ward next opined that Plaintiff "appeared to have difficulty with attention and focus based on the need for regular repetition of questions."

---

[2] The standard is the same for the regulations governing SSI. *See* 20 C.F.R. § 416.920c.

[3] The regulations define the factor of "supportability" as follows:
> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1).

[4] The regulations define the factor of "consistency" as follows:
> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(2).

7

Tr. 540. Third, Dr. Ward opined that Plaintiff "presented with indications of depression which may impact interpersonal interaction in work settings including limited or negative social interaction." Tr. 540. And lastly, Dr. Ward opined that Plaintiff's "testing results were indictive of problems with intellectual functioning which may negatively impact ability to adequately manage occupational tasks when coupled with normal work pressures." Tr. 540.

The ALJ pointed out that Dr. Ward "made a number of vague statements, intermingled with phrasing that simply constituted communication of the claimant's self-reporting of symptoms (and his own mental status observations as made during his evaluation)." Tr. 682. Nonetheless, the ALJ determined that Dr. Ward's "statements may be construed at least in part as [a] medical opinion." Tr. 682. The ALJ, however, ultimately found Dr. Ward's opinion unpersuasive because it was not supported by his own examination findings and not consistent with the evidence record. Tr. 682-83. The ALJ's analysis shows full compliance with the requirement to evaluate the supportability and consistency of Dr. Ward's opinion. The ALJ cited to several of Dr. Ward's examination findings that conflicted with his own opinion as well as evidence from the record that proved inconsistent with Dr. Ward's opinion and more supportive of the ALJ's residual functional capacity determination.

The ALJ found Dr. Ward's own examination findings from his evaluation of Plaintiff to not be supportive of his "overly restrictive opinion." Tr. 682. For example, the ALJ found Dr. Ward's diagnosis of a mild intellectual development disorder to be not supported by Dr. Ward's exam findings that Plaintiff has a driver's license, drives, utilizes

8

the internet and electronic devices, maintains contact with her family, has positive relationships, and has no "apparent deficits which would impact [Plaintiff's] ability to manage funds." Tr. 682-83 (quoting Tr. 534-41). Contrary to Plaintiff's assertions, the ALJ did explain how Plaintiff's own reports to Dr. Ward regarding operating a vehicle, enjoying photography, and playing guitar did not support Dr. Ward's opinion. The ALJ explained that Plaintiff's reported activities and abilities are "suggestive of adequate and even significant adaptive functionality, and is not supportive of [Dr. Ward's] diagnosis of actual intellectual disorder and his perception that the claimant's extremely low intelligence test scoring 'appears to be reliable.'" Tr. 683 (quoting Tr. 539); *see also* Tr. 679-80. The ALJ further determined that Dr. Ward's findings are "not supportive of his overly restrictive assessments regarding performance of 'more sophisticated one-step instructions' and (vague) limitations regarding completion of work duties, problems with 'interpersonal interaction in work settings,' and ability to adequate[ly] manage occupational tasks 'when coupled with normal work pressures.'" Tr. 683 (quoting 540).

After careful review, the Court concludes that the ALJ properly determined that Dr. Ward's own examination findings did not support his opinion. Dr. Ward failed to provide persuasive explanations to support his medical opinion. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); *Gayla J. C. v. Kijakazi*, No. 21-cv-1687 (TNL), 2022 WL 4017504, at *9 (D. Minn. Sept. 2, 2022) (finding that "the ALJ properly considered the supportability factor by finding that Dr. Kaiser did not provide detailed support for her opinion"). And Dr. Ward's opinion is made

9

up of vague and conclusory statements. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("[A] treating physician's opinion deserves no greater respect than any other physician's opinion when it consists of nothing more than vague, conclusory statements." (citation omitted)); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (finding assessment of claimant to consist "of nothing more than vague, conclusory statements" that possessed "little evidentiary value" because no medical evidence was cited to and "little to no elaboration" was provided (citation omitted)).

Furthermore, the ALJ properly found Dr. Ward's opinion, including Plaintiff's difficultly with understanding and responding to Dr. Ward's questions; difficulty with attention and focus; Dr. Ward's restriction of more sophisticated one-step instructions; and "vague assessments that the claimant would have problems with workplace social interaction, completion of work duties, and ability to manage work tasks given normal work pressures" as inconsistent with the record evidence. Tr. 683. In support, the ALJ cited to other evidence in the record that was inconsistent with Dr. Ward's opinion. *See* Tr. 683 (citing Tr. 360, 1005, 1085-87, 1092-93, 1104, 1290). For example, examination findings from July 2018 found Plaintiff's intellect to be normal. *See* Tr. 360. Observations from a psychiatric exam in early July 2020 estimated Plaintiff to have an average intelligence, normal cognition, and a sufficient fund of knowledge and language. Tr. 1085-87. Psychiatric exams from late July and mid-August in 2020 observed normal cognition, an average estimated intelligence, no memory loss, sufficient fund of knowledge and

10

language, and normal attention span and concentration. Tr. 1092-93, 1104[5]. In November 2020, clinical notes recognized Plaintiff's ability to "follow[] verbal commands" and described her "[a]ttention [as] intact." Tr. 1005, 1290. All of the above contradicts Dr. Ward's opinion, including Plaintiff's low IQ score, resulting from Dr. Ward's IQ testing, *see* Tr. 680, and Plaintiff's reported symptoms, Tr. 679, all of which the ALJ thoroughly discussed and considered.

The Court concludes that the ALJ did not err in his consistency analysis of Dr. Ward's opinion as the ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (citations omitted). Because the ALJ supported his findings with substantial evidence in the record, the ALJ was not required to adopt Dr. Ward's opinion. *See Seth K. v. Kijakazi*, No. 21-cv-76 (MJD/LIB), 2022 WL 3718601, at *5 (D. Minn. July 27, 2022) ("[T]he ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces h[im] otherwise."), *report and recommendation adopted*, 2022 WL 3717043 (D. Minn. Aug. 29, 2022).

In sum, the Court concludes that the ALJ did not err in considering the supportability and consistency factors in finding Dr. Ward's opinion not persuasive, and that the ALJ's

---

[5] Plaintiff highlights her reports at the psychiatric exam in August 2020 of feeling anxious, fearful, depressed as well as difficulties with sleeping, excessive worrying, fatigue, paranoia, and racing thoughts. *See* Pl.'s Mem. in Supp. at 8. Plaintiff's subjective complaints, however, are not enough to establish a disability. *See* 20 C.F.R. § 416.929(a). "There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* Plaintiff is essentially asking this Court to reweigh the evidence by pointing out her subjective complaints from August 2020. *See infra*.

decision is supported by substantial evidence in the record as a whole. It is not the role of the Court to reweigh the evidence presented to the ALJ. *See Schmitt v. Kijakazi*, 27 F. 4th 1353, 1361 (8th Cir. 2022) ("Despite [the claimant's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence."). Plaintiff points to evidence in the record to support her position, however, the Court must not reweigh the evidence. And "[w]hile it is not surprising that, in an administrative record which exceeds 1,500 pages, [Plaintiff] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's [residual functional capacity] determination and the decision to discount [Dr. Ward's] opinion." *See Fentress*, 854 F.3d at 1021 (citing *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.").

### 2. State Agency Psychologists' Opinions

Dr. Johnston and Dr. Tangeman, two state agency psychologists, offered virtually identical opinions. In May 2019, Dr. Johnston opined that Plaintiff is limited to simple, repetitive, one to two step tasks, in environments where there is no demand for a fast pace. Tr. 681, 124. Dr. Johnston also opined that Plaintiff could interact with the public no more than 20% of the workday and cannot participate in sales or negotiations but can relate to others infrequently. *See* Tr. 681, 124. Dr. Johnston lastly opined that Plaintiff could adapt to settings where changes are infrequent but that changes can occur no more than 10% of

the workday. *See* Tr. 681, 125. In August 2019, Dr. Tangeman adopted Dr. Johnston's above opinions. Tr. 681, 169-70. The ALJ considered the above opinions but found only partially persuasive both Dr. Johnston's and Dr. Tangeman's opinions, concluding that the evidence record is most consistent with the ALJ's residual functional capacity determination. Tr. 681.

Plaintiff argues that the ALJ's findings with respect to these opinions are flawed because the ALJ did not sufficiently analyze the supportability and consistency of the opinions. *See* Pl.'s Mem. in Supp. at 7-8. Plaintiff puts a particular emphasis on the supportability analysis, arguing that the ALJ failed to address the pace limitations opined by Dr. Johnston and Dr. Tangeman. *Id.* at 7; *see also* Pl.'s Reply at 1-2. The Court concludes that the ALJ did not err in his consideration of Dr. Johnston's and Dr. Tangeman's opinions and the ALJ did not fail to consider the pace limitations.

As for supportability, the ALJ concluded that Dr. Johnston's and Dr. Tangeman's opinions were partially based on Dr. Ward's unpersuasive opinion which hindered the supportability of the state psychologists' opinions. *See* Tr. 681, 119, 124-25, 165, 169-70. Plaintiff argues that the ALJ failed to address the state psychologists' limitation of "no demand for fast pace" in the ALJ's decision. *See* Pl.'s Mem. in Supp. at 18; Pl.'s Reply at 1-2. Plaintiff also argues that Defendant's brief fails to address this issue which—as Plaintiff argues—is evidence the ALJ did not consider that limitation. *Compare* Pl.'s Reply at 2, *with* Def.'s Brief at 6, 11. Defendant, however, did argue that the ALJ's decisions included the "pace elements that are part of Plaintiff's arguments." Def.'s Brief at 6. Dr. Johnston's and Dr. Tangeman's opinions, including the pace limitation is partially based

13

on Dr. Ward's opinion, which the ALJ found unpersuasive. *See* Tr. 682-83, 119, 165. While the ALJ recognized that Dr. Ward's opinion partially supported the state psychologists' opinions, *see* Tr. 681, Dr. Ward's opinion was ultimately rejected by the ALJ. *See* Tr. 682-83.

Nonetheless, the Court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." *McCoy*, 648 F.3d at 615. Based on the Court's review of the record, the Court concludes that the ALJ did not overlook the state psychologists' limitation of no demand for a fast pace. Such limitation was implicitly discussed in the ALJ's analysis of Dr. Ward's opinion and the state psychologists' opinions, *see* Tr. 681-83, therefore; the ALJ did not disregard or ignore the opined pace limitation. Further, "an arguable deficiency in opinion-writing technique does not require [the Court] to set aside an administrative finding when that deficiency had no bearing on the outcome." *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (quotation omitted). An arguable deficiency in the ALJ's opinion writing in this matter had no bearing on the outcome of this case because—as the ALJ pointed out—the state psychologists "had no opportunity to review the later specialized mental status observations . . . featuring recurrent clinician reporting of 'average' estimated intelligence, no memory loss, and 'normal' attention span and concentration." Tr. 681 (citing Tr. 1086-87, 1092-93, 1104). This is not the type of circumstance that warrants remand. *See Senne v. Apfel*, 198 F.3d 1065, 1067-68 (8th Cir. 1999) (rejecting the argument that deficiency in the ALJ's opinion writing alone warrants remand, but finding remand appropriate when the ALJ's findings

were not sufficient to ascertain whether the ALJ's decision was supported by substantial evidence on the record); *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987) (finding harmless error where "the deficiency probably had no practical effect on the outcome of the case.").

As for the consistency analysis, the ALJ properly found the state psychologists' opinions to be inconsistent with more recent medical records on Plaintiff's mental functioning that the state psychologists had not reviewed but which directly contradicted the state psychologists' opinions. *See* Tr. 681 (citing Tr. 1086-87, 1092-93, 1104). The ALJ must consider all the evidence. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("It is the ALJ's responsibility to determine a claimant's [residual functional capacity] based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."). As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F. 4th at 1360 (quotation omitted).

The ALJ also considered other evidence showing, among other things, that Plaintiff generally presented throughout her medical history (including since the amended alleged onset date of disability) with a normal mood, affect, alertness, orientation, speech, thought content, intellect, memory, and cognition, Tr. 681; *see, e.g.*, Tr. 359-60, 399, 453-54, 464-66, 471, 477, 482, 500, 505, 524-26, 553, 556, 559, 561-62, 620, 626, 629, 641, 994, 1121-22, 1137-38, 1213-15, 1257, 1276. Thus, the ALJ properly considered the medical opinions by addressing the supportability and consistency of the state psychologists' partially persuasive medical opinions. The Court concludes that the ALJ's residual functional

15

capacity determination—in particular that Plaintiff is limited to performing "jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in the job process from day to day, and jobs with multistep tasks, easily resumed after momentary distraction", *see* Tr. 674—is supported by substantial evidence in the record as a whole. "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted). "Even though the [residual functional capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Id.* (quotation omitted); *see* 20 C.F.R. § 416.946(c).

## V. CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2. Defendant's request for relief, ECF No. 20, is **GRANTED**.

3. The Commissioner's decision is **AFFIRMED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: September 17, 2024          *s/ Tony N. Leung*
                                  Tony N. Leung
                                  United States Magistrate Judge
                                  District of Minnesota


                                  *Dixie J. P. v. O'Malley*
                                  Case No. 23-cv-1104 (TNL)